[No. H020636. Sixth Dist. Feb. 16, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS HENRY ALVARADO, Defendant and Appellant.

**Counsel**

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**WUNDERLICH, J.—**

### I. *Introduction*

Penal Code section 667.61,[1] commonly known as the "One Strike" law (*People v. Rayford* (1994) 9 Cal.4th 1, 8 [36 Cal.Rptr.2d 317, 884 P.2d 1369]), mandates indeterminate life terms for those who, among other things, commit a rape "during the commission of a burglary." (§ 667.61, subds. (b) & (e)(2).)[2] In this case, we hold that the phrase "during the commission of a burglary" includes the period of time that a burglar remains on the premises after entry and extends until the burglar has reached a place of temporary safety.

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] In relevant part, section 667.61, provides, "(b) Except as provided in subdivision (a), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j). [¶] (c) This section shall apply to any of the following offenses: [¶] (1) A violation of paragraph (2) of subdivision (a) of Section 261. [¶] . . . [¶] (e) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶] (2) Except as provided in paragraph (4) of subdivision (d), the defendant committed the [specified sex offense] *during the commission of a burglary*, as defined in subdivision (a) of Section 460, or

## II. *Statement of the Case*

A jury convicted defendant Carlos Henry Alvarado of residential burglary, residential robbery, false imprisonment, and forcible rape and also found that the rape victim was elderly and that the rape occurred during the commission of a burglary. The court imposed a 15-year-to-life term for the rape, a consecutive and an aggravated term of six years for the robbery with a one-year enhancement because the victim was elderly. The court stayed the sentences imposed for residential burglary and false imprisonment under section 654.

On appeal from the judgment, defendant claims there was insufficient evidence the rape occurred during the burglary and that the trial court erred in failing to define the statutory phrase *during the commission of a burglary.* He also claims the court erred in using the same facts to impose the life term for rape and the aggravated term for robbery, failing to state reasons for making the robbery term and enhancement consecutive to the life term, and failing to stay the sentence for robbery under section 654. Last, defendant claims his sentence violates the constitutional proscriptions against cruel and/or unusual punishment.

We affirm the judgment.

## III. *Facts*

About 10:00 p.m. on December 25, 1998, defendant broke into the home of his 81-year-old neighbor, who was on the phone with her friend. The victim screamed when she saw defendant. Her friend heard her and called the victim's daughter and granddaughter, who immediately left. Another relative called the police.

Meanwhile, defendant assaulted the victim and demanded her money. She gave him her purse, and he took the $10 and change that were inside. He demanded more and then pushed her into the bedroom, forced her onto the bed, and raped her. He fled when he heard the victim's relatives arrive. Police also arrived and commenced a perimeter search of the area. They found defendant squatting behind a fence next door to the victim's house. His shirt was bloody, and when asked if he was all right, he responded, "I needed drugs, I needed drugs. I did it because I needed drugs." He spoke loudly and rapidly, he was sweating profusely, and his pupils were dilated.

during the commission of a burglary of a building, including any commercial establishment, which was then closed to the public, in violation of Section 459." (Italics added.)

Section 459 defines burglary as the entry of any structure with intent to commit theft or any felony. Section 460, subdivision (a) makes the burglary of a residence, among other places, first degree burglary.

When arrested, defendant had the victim's money in his pocket. After the victim identified him, he was taken to the station and booked. At that time, his blood-alcohol content was .13. He waived his rights and told Sergeant Charles Wall of the San Jose Police Department that he used a stick to gain entry. He said he raped the victim but did not intend to hurt her.

Later, that evening, defendant spoke to Detective Michael King of the San Jose Police Department. Defendant was cooperative and extremely remorseful, disgusted, and ashamed of himself. He again waived his rights and explained what had happened. He said he had been drinking with his friends that day and volunteered to get more alcohol. Since he had no money, he decided to rob the elderly woman who lived across the street. He did not initially intend to rape her, but he became sexually aroused after taking her money and then decided to rape her. At King's suggestion, defendant wrote a letter of apology to the victim.

### The Defense

Defendant's mother, two uncles, aunt, school counselor, and family friends testified to the effect that defendant is not a violent or aggressive person.

### IV. Sufficiency of the Evidence of Rape during Commission of Burglary

Defendant contends the evidence does not support the jury's finding that the rape occurred "during the commission of a burglary," as required under section 667.61, subdivision (e)(2) (hereafter section 667.61(e)(2)). He notes that a burglary is complete, in that the elements have been satisfied, the moment one enters a structure with the intent to commit theft or any felony. (See § 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1039-1040 [31 Cal.Rptr.2d 128, 874 P.2d 903].) Thus, he argues that under section 667.61(e)(2), a rape "during the commission of a burglary" does not include a rape after the burglary has been *initially* committed. Since the evidence shows that he raped the victim after entering and obtaining her money, he claims his One Strike sentence cannot stand. We reject defendant's interpretation of "during the commission of a burglary."

In construing statutes, we determine the legislative intent so as to effectuate the purpose of the statute, and the first place we look for an expression of intent is the statutory language. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; *People v. Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) We focus on the words and, giving them their ordinary meaning, determine

whether they unequivocally express the Legislature's intent. "If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. [Citation.]" (*Morse v. Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 24 [56 Cal.Rptr.2d 706, 923 P.2d 1].) Although the defendant is entitled to the benefit of every reasonable doubt concerning the true interpretation of words or the construction of language used in a statute, we must avoid interpretations that would frustrate the purpose of a statute, render it nugatory, and lead to absurd results. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1221 [275 Cal.Rptr. 729, 800 P.2d 1159]; *People v. Craft* (1986) 41 Cal.3d 554, 559-560 [224 Cal.Rptr. 626, 715 P.2d 585]; see, e.g., *People v. Nguyen* (1994) 23 Cal.App.4th 32, 43 [28 Cal.Rptr.2d 140]; *People v. Souza* (1993) 15 Cal.App.4th 1646, 1652 [19 Cal.Rptr.2d 731].)

Section 667.61 mandates indeterminate sentences of 15 or 25 years to life for specified sex offenses that are committed under one or more "aggravating circumstances," such as when the perpetrator kidnaps the victim, commits the sex offense during a burglary, inflicts great bodily injury, uses a deadly weapon, sexually victimizes more than one person, ties or binds the victim, or administers a controlled substance to the victim. (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1295 [94 Cal.Rptr.2d 784]; § 667.61, subd. (e)(1)-(7).) The purpose of the One Strike law is "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction," "where the nature or method of the sex offense 'place[d] the victim in a position of *elevated vulnerability*.' [Citation.]" (*People v. Palmore, supra,* 79 Cal.App.4th at p. 1296, italics in *Palmore*.)

Section 667.61(e)(2) in particular reflects a legislative finding that the victims of a residential burglary are more vulnerable because they are inside a structure rather than out in public. (Cf. *People v. Jackson* (1992) 6 Cal.App.4th 1185, 1190 [8 Cal.Rptr.2d 239] [reaching same conclusion regarding § 212.5, proscribing residential robbery].) Courts have long recognized this to be true. (See, e.g., *People v. Talbot* (1966) 64 Cal.2d 691, 703 [51 Cal.Rptr. 417, 414 P.2d 633], overruled on other grounds in *People v. Ireland* (1969) 70 Cal.2d 522, 540 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323] ["Persons within buildings are in greater danger of suffering at the hands of felons bent on stealing from them or engaging in felonious conduct than persons outdoors would be"]; accord, *People v. Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22]; *People v. Hicks* (1993) 6 Cal.4th 784, 796-797 [25 Cal.Rptr.2d 469, 863 P.2d 714] [burglary aggravated the sexual offenses "by increasing the victim's vulnerability and decreasing her chance of escape"].) Moreover, common experience reveals

that people usually lower their guard at home, especially when they are eating, reading, watching television, bathing, and sleeping. However, at those very times, they are unsuspecting and particularly vulnerable to shock and surprise by an intruder. (See *People v. Wilson, supra,* 1 Cal.3d at p. 440; *People v. Hicks, supra,* 6 Cal.4th at pp. 796-797; *People v. Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612].) Thus, it is clear that in section 667.61(e)(2), the Legislature sought to deter by harsher punishment those who burglarize homes and exploit the vulnerability of people inside to commit sex offenses.

Turning to defendant's interpretation of the statutory language, we note that it would not deter sexual assaults against those whom a burglar finds inside a house after entering it. Clearly, however, the elevated vulnerability of people inside homes does not dissipate after a burglar has successfully gained entry. On the contrary, their vulnerability may actually increase as the burglar assumes control of the premises, takes additional steps to avoid detection, and disables those present.

Moreover, under defendant's interpretation, the statute would apply to sex offenses committed only when the burglar is in the process of entering a structure. Simply stating this theoretical scenario exposes defendant's interpretation as patently absurd. Indeed, we cannot realistically imagine, and defendant does not suggest, how his interpretation would ever apply, especially given the fact that "an entry occurs for purposes of the burglary statute if any part of the intruder's body, or a tool or instrument wielded by the intruder, is 'inside the premises.' [Citations.]" (*People v. Wise* (1994) 25 Cal.App.4th 339, 345 [30 Cal.Rptr.2d 413].)

As noted, we must avoid statutory interpretations that would frustrate the purpose of a statute, render it meaningless, and lead to absurd results. (*People v. Gonzalez, supra,* 51 Cal.3d at p. 1221; *People v. Craft, supra,* 41 Cal.3d at p. 560.) We find defendant's technical view of "during the commission of a burglary" to be unreasonably narrow and believe it would substantially frustrate the purpose of section 667.61(e)(2): It neither protects those the statute was designed to protect nor deters burglars from sexually preying on the people they encounter after entering residences. We also note that in other legal contexts, the defendants have asserted the view that a burglary is over upon entry, and courts have repeatedly rejected it. (See, e.g., *People v. Montoya, supra,* 7 Cal.4th 1027 [assessing liability as aider and abettor]; *People v. Bodely* (1995) 32 Cal.App.4th 311 [38 Cal.Rptr.2d 72] [applying felony murder rule]; *People v. Ramirez* (1979) 93 Cal.App.3d 714 [156 Cal.Rptr. 94] [applying enhancements]; *People v. Walls* (1978) 85 Cal.App.3d 447 [149 Cal.Rptr. 460] [same]; cf. *People v. Castro* (1994) 27

Cal.App.4th 578 [32 Cal.Rptr.2d 529] [similar claim regarding duration of rape for purposes of enhancement]; *People v. Johnson* (1980) 104 Cal.App.3d 598, 603 [164 Cal.Rptr. 69] [similar claim regarding duration of receiving stolen property for purposes of enhancement].)

Viewing the statutory language in the light of the legislative objective sought to be achieved and the evil to be averted (*People v. Fierro* (1991) 1 Cal.4th 173, 226 [3 Cal.Rptr.2d 426, 821 P.2d 1302]), we believe that section 667.61(e)(2) must be construed to protect people in their homes from sexual attacks by burglars *after* the burglar has gained entry. The question remains, however, what is the scope of the phrase "during the commission of a burglary" in section 667.61(e)(2).

In *People v. Palmore, supra,* 79 Cal.App.4th 1290, the court opined that the word *during* in section 667.61(e)(2) "indicates that the Legislature was using 'burglary' in its colloquial rather than its strict legal sense. Burglary, for purposes of this special sentencing circumstance in the one strike statute, means the entire course of illegal entry, commission of a felony and escape rather than the technical meaning of entry at a discrete time with intent to commit a felony." (79 Cal.App.4th at pp. 1295-1296.) Although this passage provides an answer to our question, we note that *Palmore* involved the commercial burglary portion of 667.61(e)(2) (see fn. 2, *ante*), and the issue there was whether the business had to be closed at the time of entry. The case did not involve the duration of a burglary or whether a burglary is over upon entry.

We agree with the *Palmore* court's understanding of the statutory phrase and find additional support in cases where courts have interpreted the same or similar language in statutes, which, like section 667.61(e)(2), provide ancillary consequences to the commission of a felony. (See *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] ["Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction"].)

■ In construing the phrase "in the perpetration of" in section 189, which defines first degree murder to include an unlawful killing in the perpetration of certain felonies, the California Supreme Court has explained that the felony-murder statute was adopted to protect the community and its residents and not to benefit criminals. (*People v. Chavez* (1951) 37 Cal.2d 656, 669-670 [234 P.2d 632].) Thus, the court has repeatedly rejected interpretations that would place technical limits on the scope of the phrase or require a strict causal relationship between the underlying felony and the

homicide. Instead, the court has consistently held that a homicide is committed *in the perpetration of* a felony if the killing and felony are parts of "one continuous transaction," and this transaction may include flight after the felony to a place of temporary safety. (*People v. Hart* (1999) 20 Cal.4th 546, 608-609 [85 Cal.Rptr.2d 132, 976 P.2d 683]; *People v. Ainsworth* (1988) 45 Cal.3d 984, 1015-1016 [248 Cal.Rptr. 568, 755 P.2d 1017]; *People v. Welch* (1972) 8 Cal.3d 106, 118 [104 Cal.Rptr. 217, 501 P.2d 225]; *People v. Salas* (1972) 7 Cal.3d 812, 820-824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832]; *People v. Whitehorn* (1963) 60 Cal.2d 256, 264 [32 Cal.Rptr. 199, 383 P.2d 783]; *People v. Chavez, supra,* 37 Cal.2d 656; see *People v. Boss* (1930) 210 Cal. 245, 253 [290 P. 881];[3] but see *People v. Pulido* (1997) 15 Cal.4th 713, 724 [63 Cal.Rptr.2d 625, 936 P.2d 1235] [limiting scope of nonkiller accomplice's liability for a homicide during commission of a robbery].)

Thus, for example, in *People v. Bodely, supra,* 32 Cal.App.4th 311, the defendant was convicted of felony murder because he killed a person while fleeing the store he had just burglarized. This court rejected a claim, identical to defendant's in this case, that the killing occurred *after*, not in perpetration of, the burglary. Instead, we held that for purposes of determining felony-murder liability, a burglary continues during the burglar's escape until he or she reaches a place of temporary safety. (*Id.* at p. 314.)

In construing statutes that provide additional punishment for conduct performed *in* or *during the commission of* a felony, courts have consistently relied on the felony-murder cases cited above and adopted the broad continuous-transaction test for the duration of a felony, including the perpetrator's escape to a place of safety. (See, e.g., *People v. Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400] [enhanced punishment under

---

[3]In *People v. Boss, supra,* 210 Cal. 245, the court explained, "It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his possession, or in the possession of a co-conspirator, the crime is not complete in the purview of the law, inasmuch as said conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape. Robbery . . . is not confined to a fixed *locus*, but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime." (*Id.* at pp. 250-251, original italics.)

former § 213 for great bodily injury "in the course of commission of [a] robbery"]; *People v. Ramirez, supra,* 93 Cal.App.3d 714 [enhanced punishment under former §§ 213, 264, & 461 for great bodily injury during the commission of burglary]; *People v. Johnson, supra,* 104 Cal.App.3d 598 [enhancement under § 12022.7 for great bodily injury "in the commission or attempted commission of" receiving stolen property]; *People v. Heston* (1991) 1 Cal.App.4th 471 [2 Cal.Rptr.2d 26] [enhancement under § 12022.4 for furnishing a firearm "during the commission or attempted commission of a felony"]; *People v. Castro, supra,* 27 Cal.App.4th 578 [enhancement under § 12022.3 for use of a knife "in the commission of" rape]; *People v. Taylor* (1995) 32 Cal.App.4th 578 [38 Cal.Rptr.2d 127] [enhancement under § 12022.5 for personal use of a firearm "in the commission or attempted commission of" burglary]; cf. *People v. Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145] [kidnapping committed during escape from robbery is kidnapping "to commit robbery" within § 209].)

For example, in *People v. Ramirez, supra,* 93 Cal.App.3d 714, the defendant burglarized two homes, and each time, after gaining entry but before his escape, he inflicted great bodily injury. As here, the defendant claimed that the burglary was over before he inflicted great bodily injury on the victims. The court rejected this claim because it "would subvert the legislative intent in enacting the enhancement provisions." (*Id.* at p. 726.) Rather, to achieve the Legislature's purpose, the court adopted the broader view of the duration of a burglary and upheld the enhancements because the infliction of injury and burglaries were part of "a continuous course of criminal conduct" and the injuries were inflicted on the premises and/or before the defendant made his escape. (*Ibid.*)

More recently in *People v. Taylor, supra,* 32 Cal.App.4th 578, the court upheld an enhancement based on the defendant's use of a firearm during his escape after a burglary. The court explained, "[I]t is clear that for purposes of applying a firearm use enhancement, theft crimes such as robbery, burglary, and receiving stolen property continue beyond the time of the physical conduct constituting the offense until the perpetrator has reached a place of temporary safety. Accordingly, one who employs a firearm at any time on the continuum between the initial step of the offense and arrival at a place of temporary safety is subject to the enhancement. [Citation.] The reason for this result is plain. In enacting section 12022.5, the Legislature endeavored to deter the use of a firearm on victims of burglaries and other felonies. In such cases, escape is as important to the execution of the offense as is obtaining the property in the first place. Moreover, the risk of injury to the victim during the escape attempt is great. Thus, we hold that, for purposes of section 12022.5, the use of a firearm during escape from the crime scene is a use during the commission of the crime." (*Id.* at p. 582.)

Like the felony-murder provisions of section 189 and various enhancement statutes, section 667.61(e)(2) establishes ancillary consequences for committing a burglary. Moreover, all of these statutes share the same legislative purpose: to protect people from acts of force and violence that may accompany a felony, in this case burglary. For these reasons, we find the continuous-transaction test, including the perpetrator's escape, to be the appropriate way to measure the duration of a burglary under section 667.61(e)(2). Clearly, this measure provides the broadest deterrent against the commission of sex crimes against burglary victims. Therefore, we hold that for the purpose of section 667.61(e)(2), "during the commission of a burglary" refers to that period of time between the burglar's initial entry with the requisite intent and the burglar's escape to a place of temporary safety.[4]

Defendant's reliance on *People v. Sakarias* (2000) 22 Cal.4th 596 [94 Cal.Rptr.2d 17, 995 P.2d 152] does not persuade us to alter our conclusion.

*Sakarias* involved a conviction for first degree felony murder with special circumstances of murder during commission of robbery and burglary. During its deliberations, the jury asked the court whether a burglary begins when the structure is entered and continues until it is left and if so, whether the burglary continues until departure if, during the burglary, the robbery begins. (*People v. Sakarias, supra,* 22 Cal.4th at p. 623.) In response the court instructed that if the jury found that defendant entered with the intent to steal, then the homicide and the burglary were parts of " 'one continuous transaction.' " (*Ibid.*) The Supreme Court found that this answer erroneously removed from the jury the factual question of whether the murder and burglary were part of one continuous transaction. (*Id.* at pp. 623-624.)

In the course of explaining why the error was harmless vis-à-vis the burglary-murder special-circumstance finding, the court opined that "[u]nder

---

[4]We acknowledge that in *People v. Cooper* (1991) 53 Cal.3d 1158 [282 Cal.Rptr. 450, 811 P.2d 742] and *People v. Montoya, supra,* 7 Cal.4th 1027, the court declined to adopt this broad view of the duration of a felony in assessing liability as an aider and abettor for robbery and burglary. The court found that although the broad view served "the legitimate public policy considerations of deterrence and culpability in the context of determining certain ancillary consequences of robbery," it did not similarly serve those considerations in the context of determining principal liability as an aider and abettor of a robbery or burglary. (*People v. Cooper, supra,* 53 Cal.3d at pp. 1167-1168; *People v. Montoya, supra,* 7 Cal.4th at pp. 1044-1045 and fn. 9.) For this purpose, the court in *Cooper* tied the duration of a robbery closely to the elements of the offense, holding that the robbery lasts until the element of asportation is completed. In *Montoya,* the court viewed the element of entry in a burglary as ongoing conduct until the burglar departs from the residence. However, neither *Cooper* nor *Montoya* suggests that a narrower view of the duration of a burglary is required or appropriate for purposes of section 667.61(e)(2).

some circumstances, perhaps, the burglarious 'transaction' that begins with entry into the building might be found to have ended even though the burglar has not left—if, for example, he abandons his original larcenous intent but resolves to stay for a nonfelonious purpose." (*People v. Sakarias, supra,* 22 Cal.4th at p. 625.)

Citing this passage, defendant asserts that here the evidence reveals that after taking the money from the victim, he abandoned his original larcenous intent before leaving the premises, forming a different intent to commit rape. He argues that "[t]he evidence that [he] completely discarded his intent to steal before the rape supports his argument that the burglary was completed before the rape occurred." Defendant's reliance on *Sakarias* is misplaced and his argument meritless.

First, the *Sakarias* dicta does not undermine the rationale for the continuous-transaction test or suggest that the test is inapplicable or inappropriate for the purposes of section 667.61(e)(2).

Second, defendant erroneously conflates completing one's larcenous intent, as happened here, with abandoning it. The court's example contemplates the situation where the intruder abandons his or her felonious intent *before* accomplishing it and "resolves to stay for a nonfelonious purpose." (*People v. Sakarias, supra,* 22 Cal.4th at p. 625.) In such a case, the *Sakarias* court opined, the jury might find that the burglarious transaction ended before the burglar departed and, therefore, that a subsequent homicide, for example outside the structure, was not felony murder. However, as the court also explained, the facts in *Sakarias* precluded such a finding because there was no evidence of an abandonment or interruption of intent. "Although there was evidence that after entering *and stealing,* defendant and his coperpetrator formed the *additional* intent to attack the victim, there was no substantial evidence they at any point before the killing discarded or abandoned their intent to steal from her. [Citation.] Nor was there evidence of any other arguably significant interruption of events between the entry and the homicide; the evidence was simply that after gathering some personal property, the burglars waited for [the victim] to come home, then assaulted and killed her as she entered the house." (*People v. Sakarias, supra,* 22 Cal.4th at pp. 625-626, first italics added, second in original.)

We now return to defendant's initial claim of insufficient evidence. Given our analysis and conclusion concerning the duration of a burglary for the purpose of section 667.61(e)(2), we find that the evidence conclusively establishes that defendant raped the victim "during the commission of a burglary." (§ 667.61(e)(2).)

## V. *Instruction on "During the Commission of a Burglary"*

Defendant contends the court erred in failing to instruct the jury on the meaning of the phrase "during the commission of a burglary" in section 667.61(e)(2). He argues that further definition was necessary because the jury would not know what the duration of a burglary is for the purpose of determining the One Strike allegation and "may well have assumed that the burglary continued until he made his escape from the house or otherwise have been misled to find the allegation true where the facts did not support such."

We find no error. Although additional instruction would be necessary if the statutory phrase had the technical legal meaning urged by defendant, we believe jurors would naturally understand "during the commission of a burglary" to include at least the time that a burglar remains inside the structure after entry. Certainly a person on the premises when a burglar enters would not consider the burglary over until the burglar has left. (See *People v. Montoya, supra,* 7 Cal.4th at p. 1045.) Given the facts of this case, no further instruction was necessary or warranted.

## VI. *Sentencing Errors*

As noted, the court imposed a consecutive, aggravated term of six years for the robbery conviction plus an additional year because the robbery victim was elderly. (See § 667.9, subd. (a) [one-year enhancement where victim over 65 years old].) In doing so the court stated, "Under [former rule] 421(a)(1) [now rule 4.421 of the California Rules of Court], the court finds that the acts involved the threat of bodily harm, high degree of cruelty, callousness and viciousness. [The] Court also finds [former rule] 421(a)(3) that the victim is particularly vulnerable. The victim was 81 years old. She lived alone."

### A. *Consecutive Sentences*

Defendant contends the court erred in failing to state reasons for imposing a consecutive sentence. (See § 1170, subd. (c); Cal. Rules of Court, former rule 406(b)(5) [now rule 4.406, court must state reasons for imposing a consecutive sentence].) The People concede that the court failed to set forth its reasons. However, they argue that defendant waived his claim by failing object at sentencing to the lack of reasons. (See *People v. Neal* (1993) 19 Cal.App.4th 1114, 1117-1124 [24 Cal.Rptr.2d 129]; see also *People v. Scott* (1994) 9 Cal.4th 331, 352 and fn. 15 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [citing *Neal* with approval].) In anticipation of this, defendant alternatively claims defense counsel's failure to object constituted ineffective assistance of counsel.

■ To demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was unreasonable when measured by prevailing professional norms and that there is a reasonable probability that but for counsel's unreasonable acts or omissions, the result of the proceeding would have been more favorable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674]; *People v. Avena* (1996) 13 Cal.4th 394, 418 [53 Cal.Rptr.2d 301, 916 P.2d 1000].) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Sixto* (1989) 48 Cal.3d 1247, 1257 [259 Cal.Rptr. 491, 774 P.2d 164].) If the record does not disclose why counsel acted or failed to act in the manner challenged, then, unless counsel was asked for and failed to provide an explanation or there could be no satisfactory explanation, we reject the claim on appeal and affirm the judgment. Under such circumstances, the claim is more appropriately made in a petition for habeas corpus. (*People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

California Rules of Court, former rule 425 (now rule 4.425) sets forth the relevant criteria for determining whether to impose a consecutive rather than concurrent sentence. These include whether (1) "[t]he crimes and their objectives were predominantly independent of each other"; (2) "[t]he crimes involved separate acts of violence or threats of violence"; and (3) "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, former rule 425(a)(1)-(3).)

■ Although the robbery and rape were committed within a single period of aberrant behavior, their objectives were predominately independent of each other: the former to obtain money, the latter to obtain sexual gratification. Moreover, the robbery and rape involved separate acts of violence. Given the court's express decision to impose consecutive sentences and factual bases for two supporting reasons, counsel could reasonably have considered it unnecessary to request an express statement of reasons from the court. This is especially so given the court's decision to impose an aggravated sentence for the robbery. Clearly, the court was not impressed with any evidence of mitigation.

Since the record is silent as to why counsel declined to object and since his failure to do so was not unreasonable as a matter of law, we reject defendant's claim of ineffective assistance. Moreover, even if we believed counsel should have objected, we would nevertheless find his failure to do so harmless. Simply put, given the record, we do not consider it reasonably probable the court would have been unable to provide sufficient reasons for

consecutive sentences or that it would have imposed concurrent sentences. (See, e.g., *People v. Hicks, supra,* 6 Cal.4th at pp. 796-797 [consecutive sentences for rape and burglary with intent to commit rape].)[5]

## B. *Dual Use of Facts*

As noted, the court imposed a one-year enhancement to the robbery under section 667.9, subdivision (a) because the victim was over 65 years old, then, in selecting the aggravated term for robbery, the court cited, among other things, the victim's vulnerability, noting that she was 81 years old.

■ Defendant contends the trial court erred in using the victim's age twice, first to impose an enhancement and then to impose an aggravated term for robbery. (See § 1170, subd. (b) ["the fact of any enhancement" may not be used to impose the upper term]; Cal. Rules of Court, former rule 420(c) [now rule 4.420]; *People v. Scott, supra,* 9 Cal.4th at p. 350.)

Generally, where the victim's age is an element of the offense, the court may not cite the victim's vulnerability due to being that age as a reason to impose the aggravated term.[6] (*People v. Fernandez* (1990) 226 Cal.App.3d 669, 680 [276 Cal.Rptr. 631]; *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159 [249 Cal.Rptr. 435].) The court below, however, noted that the victim was 81 years old *and lived alone*. In our view, the trial court could reasonably, and properly, rely on the *combination* of these facts to find that the victim was particularly vulnerable. (See *People v. Watkins* (1992) 6 Cal.App.4th 595, 601 [8 Cal.Rptr.2d 5].) Moreover, the record reveals additional circumstances that rendered the victim particularly vulnerable: the burglary occurred at 10:00 p.m. at night, the victim is not a big woman,[7] and she speaks only Portuguese. Under the circumstances, the record fully supports the trial court's reliance on the victim's vulnerability to impose an aggravated term.

For this reason, a remand would be unnecessary even if it were error to cite the victim's age. Given the numerous other circumstances that rendered her vulnerable, we do not find it reasonably probable the court would reach

---

[5]Defendant asserts that the trial court failed to state reasons because it did not think it had discretion to impose concurrent sentences. If the record clearly established that the trial court thought consecutive sentences were mandatory, not discretionary, then a remand would be appropriate. (See, e.g., *People v. Deloza* (1998) 18 Cal.4th 585 [76 Cal.Rptr.2d 255, 957 P.2d 945]; cf. *People v. Banks* (1997) 59 Cal.App.4th 20 [68 Cal.Rptr.2d 731] [sentencing court clearly thought it lacked discretion to strike prior convictions in furtherance of justice].) Here, however, defendant merely speculates that the court misunderstood the scope of its discretion.

[6]Here, age is an element of the enhancement.

[7]The record reveals that she is five feet four inches tall and weighs 152 pounds.

a different conclusion in finding the victim vulnerable or imposing an aggravated term. (See, e.g., *People v. Watkins, supra,* 6 Cal.App.4th 595 [even if court erred, remand for resentencing unnecessary]; see also *People v. Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692] [one aggravating factor sufficient to support aggravated term].)

### C. *Multiple Punishment*

■ Defendant contends that the imposition of a One Strike sentence for rape during a burglary and a separate sentence for robbery violates the prohibition against multiple punishment in section 654. He notes that the burglary, robbery, and rape were part of an indivisible course of criminal conduct and the burglary and robbery shared the same intent to steal. He claims that the life term for rape during a burglary punished his intent to steal, and therefore punishing it again with a robbery sentence is barred under section 654. We disagree.

■ Section 654 is intended to ensure that punishment is commensurate with a defendant's criminal culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; accord, *People v. Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].) It expressly prohibits multiple sentences where a single act violates more than one statute. For example, a defendant may be guilty of both arson and attempted murder for throwing gasoline into an inhabited room and lighting it, but the single act may be punished only once. (See, e.g., *Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

Section 654 also prohibits multiple sentences where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct engaged in with a single intent and objective. (*Neal v. State of California, supra,* 55 Cal.2d at p. 19.) "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Ibid.*) Thus, in legal effect, different acts that violate different statutes merge under the perpetrator's single intent and objective and are treated as if they were a single act that violates more than one statute.

If, on the other hand, in committing various criminal acts, the perpetrator acted with multiple criminal objectives that were independent of and not merely incidental to each other, then he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct. (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639 [105 Cal.Rptr. 681, 504 P.2d 905].)

In *People v. Palmore, supra,* 79 Cal.App.4th 1290, the court rejected the same claim raised by defendant. There, the defendant was convicted of forcible rape during a commercial burglary, sodomy, and robbery. (*Id.* at pp. 1293, 1297.) In rejecting the defendant's claim, the court explained that "the section 667.61, subdivision (e)(2) circumstance, that the rape occurred during the burglary of a commercial building then closed to the public, goes to the nature and seriousness of the sex offense due to the victim's increased vulnerability. Section 654 does not apply because the section 667.61, subdivision (e)(2) circumstance, like an enhancement, does not define an offense but instead increases the punishment for the underlying substantive crime, here a sex offense. [Citations.] The forcible rape offense with its one strike sentencing allegation is not identical to the robbery count. [The defendant's] criminal intent and objectives were different in carrying out these crimes, and there was no double punishment under section 654." (*Id.* at pp. 1297-1298.)

We question whether the enhancement/substantive offense distinction is determinative concerning the applicability of section 654 in this context. As the People note, the California Supreme Court in *People v. Coronado* (1995) 12 Cal.4th 145, 157 [48 Cal.Rptr.2d 77, 906 P.2d 1232] held that section 654 does not apply to *status* enhancements—e.g., enhancements for prior felony convictions—but did not resolve the question of whether section 654 applies to conduct enhancements. The Courts of Appeal are divided on the issue. (See *People v. Arndt* (1999) 76 Cal.App.4th 387, 394-395 [90 Cal.Rptr.2d 415] [noting split of authority concerning conduct enhancements]; *People v. Myers* (1997) 59 Cal.App.4th 1523, 1529-1530 [69 Cal.Rptr.2d 889] [same].)

An allegation under section 667.61 is functionally equivalent to a *conduct* enhancement—e.g., use of a gun, infliction of great bodily injury—in that both increase the punishment for an underlying offense based on conduct that is not necessarily an element of the offense. For this reason, we join the People in assuming that section 654 applies to a One Strike allegation. (See § 667.61, subd. (f).) Even then, however, we concur with *Palmore's* ultimate conclusion that section 654 does not bar punishment for both the rape and robbery.

First, as noted, the rape and robbery each had its own unique objective, and neither was merely incidental to or a means toward committing the other. Defendant robbed the victim for money, and he raped her for sexual gratification; conversely, he did not rape the victim to get money or steal her money to rape her. Thus, although the crimes were part of an otherwise indivisible course of conduct they are separately punishable. (Cf. *People v.*

*Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32] [assault of robbery victim had separate intent and objective than the robbery]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 189-193, 196 [251 Cal.Rptr. 40] [harming of unresisting robbery victim a separate objective from the robbery itself].)

We acknowledge that defendant was subject to the harsher, One Strike sentence for the rape because it occurred during the commission of a burglary.[8] However, we reject defendant's assertion that that the One Strike rape sentence represented punishment for defendant's intent to steal.

As discussed above, the section 667.61(e)(2) is designed to deter burglars from taking sexual advantage of those whose vulnerability is heightened. To advance this purpose, we do not view a burglary in its elemental form as simply the moment of entry with intent. Rather, we view the moment a burglary is initially committed as the *beginning* of what may be called an ongoing burglary. There is a significant difference between the initial commission of a burglary and an ongoing burglary. The initial commission requires the concurrence of an act—entry—and felonious intent; however, the concept of an ongoing burglary does not require such concurrence and requires only continuous conduct. In other words, what makes an ongoing burglary *continue* is not that the burglar maintains his or her initial felonious intent after entry. Indeed, a rape may be deemed to have occurred during a burglary even if it takes place after the burglar's initial intent has completely dissipated, for example, where the burglar has taken all that he or she wants or has been unable to find anything to take. Rather, what makes the burglary ongoing is that the burglar *continues to be engaged in conduct temporally connected to the initial commission of the offense*, such as remaining inside the structure and later escaping to a place of temporary safety. It follows that in targeting sexual offenses committed while the burglar is engaged in such ongoing conduct, section 667.61(e)(2) punishes that *ongoing conduct* and the sexual offense and not the burglar's initial felonious intent, which he or she may no longer, and need not, possess at the time the sexual offense is committed.

Although the robbery sentence punished defendant's intent to steal and precluded separate punishment for the burglary conviction itself because both shared the same intent, the rape during the ongoing burglary and the robbery did not share that intent and, therefore, did not merge for purposes of punishment. Thus, the trial court properly punished defendant for both crimes. Moreover, we consider multiple punishment clearly appropriate here because defendant's overall conduct after entry was far more culpable

---

[8]The standard sentences for rape are three, six, or eight years. (§ 264.)

because of the rape than it would have been without it. (See *People v. Perez, supra,* 23 Cal.3d at p. 553 [multiple punishment appropriate because a defendant who commits "a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act"].)

## VII. *Cruel and Unusual Punishment*

■ Defendant contends that a life term for rape during a burglary violates the constitutional proscriptions against cruel and/or unusual punishment. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We disagree.

■ A punishment is excessive under the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime." (*Gregg v. Georgia* (1976) 428 U.S. 153, 173 [96 S.Ct. 2909, 2925, 49 L.Ed.2d 859].) A punishment may violate article I, section 17 of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], fn. omitted.)

In determining whether a particular punishment is cruel and/or unusual, courts examine the nature of the particular offense and offender, the penalty imposed in the same jurisdiction for other offenses, and the punishment imposed in other jurisdictions for the same offense. (*Solem v. Helm* (1983) 463 U.S. 277, 290-291 [103 S.Ct. 3001, 3009-3010, 77 L.Ed.2d 637]; *In re Lynch, supra,* 8 Cal.3d at pp. 425-427.)

■ Concerning the nature of the offense and offender, defendant notes that he was 10 years old when his father died, he was molested by a family friend, his mother used drugs, and he started abusing various substances when he was 13 years old. He cites a psychiatric report describing him as having a polysubstance abuse problem and an "immature dependent personality disorder." Defendant also points out that before the incident, he had no criminal record and he was attending a continuation school to get a high school diploma. On the night of the incident, he was only 18 years old, he argued with his mother, drank tequila, and smoked marijuana. Last he notes that immediately after the incident, he cooperated with police, expressed deep remorse for his conduct, and wrote a letter of apology to the victim.

Defendant's troubled background, lack of a criminal record, and sincere remorse may militate for a more lenient punishment. However, his age, substance abuse, and "immature dependent personality disorder" do not

suggest that he failed to grasp the nature and consequences of his conduct and thereby further support more lenient treatment. Despite defendant's age, substance abuse, and disorder, he fully recognized and acknowledged the magnitude of his conduct immediately after being caught. Moreover, the callous and opportunistic nature of his sexual assault against a neighbor he knew to be particularly vulnerable seems to us precisely the sort of sexual offense that warrants harsh punishment.

Concerning the relative punishment for other offenses in California, defendant notes that his sentence was roughly the same as that imposed for the much more serious offenses such as second degree murder. He argues that given the "compelling mitigation based on his personal circumstances," the mandatory One Strike term of 15 years to life represents "shocking and outrageous" punishment.

Although the finality of the consequences of second degree murder make that crime categorically different from rape during a burglary, the double trauma of having one's home invaded and then being sexually violated is substantial. Moreover, second degree murder does not require a specific intent to kill or commit a felony and requires only that a person willfully and knowingly perform an act dangerous to life with conscious disregard for life. (See §§ 188, 189; *People v. Earp* (1999) 20 Cal.4th 826, 885 [85 Cal.Rptr.2d 857, 978 P.2d 15].) On the other hand, rape during a burglary reflects that the person decided to enter another's residence for a felonious purpose and also decided to commit a sexual assault inside. Contrary to defendant's argument, we cannot say that punishing such conduct as severely as second degree murder is either shocking or outrageous.

Concerning the punishment imposed for similar conduct in other jurisdictions, defendant notes that many states do not have mandatory and inflexible sentencing schemes for rape committed during another offense. Moreover, in most states that do provide greater punishment for rape during another felony, the sentencing scheme provides a range of sentences and does not "reach the strictness of California's unbending requirement of a life sentence with the possibility of parole only after 15 years are served."

Clearly, California has taken the most aggressive approach toward punishing and deterring rape during the commission of a burglary. As defendant asserts, it imposes the longest terms with the least amount of judicial discretion. However, the fact, acknowledged by defendant, that some other jurisdictions allow for the same or even harsher punishment (Louisiana and Washington) indicates that in the abstract, the One Strike term imposed here is not irrational or obviously excessive punishment for rape during a burglary. The fact that the sentence is mandatory merely reflects the Legislature's zero tolerance toward the commission of sexual offenses against

particularly vulnerable victims. It does not, however, render a defendant's sentence excessive as a matter of law in every case.

In sum, given all relevant considerations, defendant has failed to establish that his sentence is so disproportionate to his crimes that it shocks the conscience or offends fundamental notions of human dignity. (See *People v. Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch, supra,* 8 Cal.3d at pp. 423-424; see *People v. Estrada* (1997) 57 Cal.App.4th 1270 [67 Cal.Rptr.2d 596] [25 years to life for forcible rape during burglary constitutionally permissible]; *People v. Crooks* (1997) 55 Cal.App.4th 797 [64 Cal.Rptr.2d 236] [same]; cf. *Harmelin v. Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836] [life without possibility of parole for possession of drugs]; *Rummel v. Estelle* (1980) 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382] [life sentence for thefts]; *People v. Cline* (1998) 60 Cal.App.4th 1327 [71 Cal.Rptr.2d 41] [25 years to life for grand theft and residential burglary with prior residential burglary convictions]; *People v. Goodwin* (1997) 59 Cal.App.4th 1084 [69 Cal.Rptr.2d 576] [25 years to life for commercial burglary and petty theft with a prior with priors for burglary and substance offenses]; *People v. Howard* (1997) 57 Cal.App.4th 323 [66 Cal.Rptr.2d 849] [25 years to life for unlawful driving/ taking of auto with prior serious felony convictions]; *People v. Askey* (1996) 49 Cal.App.4th 381 [56 Cal.Rptr.2d 782] [25 years to life for residential burglary with priors for burglary and attempted murder]; *People v. Cooper* (1996) 43 Cal.App.4th 815 [51 Cal.Rptr.2d 106] [25 years to life for ex-felon in possession of a gun with priors for robbery]; *People v. Ingram* (1995) 40 Cal.App.4th 1397 [48 Cal.Rptr.2d 256] [61 years to life for residential burglary with identical priors] disapproved on other grounds in *People v. Dotson* (1997) 16 Cal.4th 547, 560, fn. 8 [66 Cal.Rptr.2d 423, 941 P.2d 56].)

VIII.  *Disposition*

The judgment is affirmed.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 2001.