Filed 10/22/15  P. v. Mosley CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEMETRIUS MOSLEY,<br><br>        Defendant and Appellant. | A140966<br><br>(Contra Costa County<br>Super. Ct. No. 1217363) |

Defendant Demetrius Mosley was convicted of receiving stolen property and first degree burglary with a finding that a person other than an accomplice was present during the burglary.[1]  This finding elevated the burglary conviction to a violent felony within the meaning of Penal Code section 667.5, subdivision (c)(21),[2] the effect of which was to limit defendant's presentence custody credits to 15 percent of his actual credits.  On appeal, defendant contends this finding was erroneous because the burglary was completed when he and his accomplice entered the residence, at which time no one else was present.  This claim lacks merit, and we affirm.

### EVIDENCE AT TRIAL

On the morning of July 27, 2012, Masayo Engel left home to pick up her 15-year-old son, Christopher, who was about five minutes away.  They returned directly home.  When they arrived, they saw a silver Honda parked in front of their house.

---

[1] The receiving stolen property conviction is irrelevant to the issue raised on appeal, so we omit discussion of the facts surrounding that offense.

[2] All statutory references are to the Penal Code.

1

Christopher got out of the car in the driveway, and Masayo backed her car into the garage. Christopher entered the house through a door connecting the garage to the house. He walked through the kitchen and then heard a noise so he walked into the hallway. A man he did not know walked out of his father's computer room. Upon seeing Christopher, the man announced, "They're back." Christopher ran back out through the garage, telling his mother to "run away" because there was someone in the house.

As the Engels ran out of the garage onto the driveway, they saw two men coming out of the house behind them. The men ran across the garage and into the backyard.

The Engels ran to get help from a neighbor, and as they did so, Christopher took a video of the car that was parked in front of their house, capturing the car's license plate. The neighbor was not home so they turned back towards their house. As they turned back, they saw someone hiding in a bush across the street. A man came out from behind the bush, and they recognized him as one of the men they saw leaving their house. He asked, "Are you looking for someone?," and then dashed to the silver Honda, jumped in, and sped away.

Christopher called the police, who traced the license plate in the video to a car owned by Jennica Tran, defendant's girlfriend. Tran had loaned her car to defendant that morning and then given him and a friend a ride to Fremont that afternoon. Later that same day, the police showed the Engels a photo lineup containing a photograph of defendant. Masayo immediately identified a photograph of defendant as the man she saw come out from behind the bush and get into the car. She also identified him at trial. Christopher identified two photographs as possibly one of the men he saw coming out of the house, although neither photograph depicted defendant.

Items stolen from the Engels' house were recovered two days after the burglary behind a house in Fremont.

By information filed October 11, 2012, defendant was charged with first degree residential burglary (§§ 459/460) and receiving stolen property (§ 496, subd. (a)). The information also alleged numerous special allegations, including that defendant

2

committed the burglary while a non-accomplice was in the residence (§ 667.5, subd. (c)(21)).

Following a multi-day jury trial, defendant was found guilty on both counts.

A court trial was held on the special allegations. As pertinent to defendant's contention on appeal, the court found true the special allegation that defendant committed the burglary while a non-accomplice was in the residence and that, as a consequence, defendant was only entitled to a 15 percent credit for earned presentence custody credits.

The court sentenced defendant to 15 years in state prison, and awarded him 507 days of actual presentence custody credits and 76 days of earned credits (calculated at a rate of 15 percent), for a total of 583 days.

Defendant filed a timely notice of appeal.

## DISCUSSION

First degree burglary is defined as burglary of an inhabited dwelling whether occupied at the time or not. (§§ 459, 460, subd. (a); *People v. Rodriquez* (2004) 122 Cal.App.4th 121, 131–132.) Section 667.5, subdivision (c)(21) elevates first degree burglary from a serious felony (§ 1192.7, subd. (c)(18)) to a violent felony if a person other than an accomplice is "present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21); *People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336–1337.) When a person has been convicted of a section 667.5, subdivision (c) violent felony, section 2933.1 limits his or her presentence and postsentence conduct credit to 15 percent of actual custody credits. (§ 2933.1, subds. (a), (c).) Defendant contends the trial court's finding here that the burglary was a violent felony subject to the section 2933.1 credit limitation was improper because no one other than an accomplice was present when the burglary was committed. This is so, he reasons, because the burglary was committed the moment he and his accomplice *entered* the Engels' residence, when no one else was present. Defendant's argument lacks merit.

No published authority has addressed the specific issue defendant raises. In other contexts, however, courts have construed the offense there at issue as continuing throughout the duration of the crime and, in some instances, until defendant reaches a

3

"place of temporary safety." Most apt is *People v. Alvarado* (2001) 87 Cal.App.4th 178. There, defendant challenged the jury's finding that he committed rape during the commission of a burglary within the meaning of section 667.61, subdivision (e)(2), which mandates an indeterminate life term for a defendant who commits a rape "during the commission of a burglary." Defendant theorized that a burglary is complete the moment the perpetrator enters a structure with the intent to commit theft or any felony, such that a rape committed after entering the premises did not occur during the commission of a burglary. (*People v. Alvarado, supra,* 87 Cal.App.4th at p. 185.)

Rejecting defendant's view as "unreasonably narrow," the Court of Appeal considered the purpose of the statute, noting that it "reflect[ed] a legislative finding that the victims of a residential burglary are more vulnerable because they are inside a structure rather than out in public." (*People v. Alvarado, supra,* 87 Cal.App.4th at pp. 186, 191.) Further, it noted that "in other legal contexts, the defendants have asserted the view that a burglary is over upon entry, and courts have repeatedly rejected it." (*Id.* at pp. 187–188 and cases therein collected.) The court labeled as "patently absurd" defendant's contention that the statute applied only to sex offenses committed when the burglar is in the process of entering a structure, as this construction would render the enhancement for a rape during the commission of a burglary a virtual impossibility. (*Id.* at p. 187.) The court thus held that for the purpose of section 667.61, subdivision (e)(2), "during the commission of a burglary" referred to the period of time between the burglar's initial entry and the burglar's escape to a place of temporary safety. (*Id.* at p. 191.)

*People v. Taylor* (1995) 32 Cal.App.4th 578, 582 is similarly instructive. There, a homeowner returned home to find his front door open and defendant and his accomplice outside the house. The homeowner called a neighbor and then detained the accomplice while the neighbor pursued defendant. Defendant returned to the house with a firearm, pointing it at the homeowner and demanding that he release the accomplice. Both perpetrators were eventually apprehended. Among other things, defendant was convicted

4

of burglary, with an enhancement for using a firearm during the commission of the burglary. (*Id*. at pp. 579–580.)

On appeal, defendant argued that there was insufficient evidence to support the finding that he used a firearm during the commission of a burglary because there was " 'no burglary . . . in progress' " when he confronted the homeowner with the firearm. (*Taylor, supra,* 32 Cal.App.4th at p. 580.) The Court of Appeal disagreed, discussing a series of cases in which courts have recognized that certain offenses did not terminate until the perpetrator had reached a "place of temporary safety." (*Id.* at pp. 580–581.) Then, rejecting defendant's contention, the court concluded that "for purposes of applying a firearm use enhancement, theft crimes such as robbery, burglary, and receiving stolen property continue beyond the time of the physical conduct constituting the offense until the perpetrator has reached a place of temporary safety." (*Id.* at p. 582.) The court reached this result in part based on the rationale for the enhancement: "[T]he Legislature endeavored to deter the use of a firearm on victims of burglaries and other felonies. In such cases, escape is as important to the execution of the offense as is obtaining the property in the first place. Moreover, the risk of injury to the victim during the escape attempt is great." (*Ibid*.)

As in *Alvarado* and *Taylor*, the rationale for the section 667.5, subdivision (c)(21) enhancement justifies construing the duration of a burglary as extending beyond the initial moment of entry. The commission of a burglary while someone other than an accomplice is present "plainly presents a potential for violence and consequently merits enhanced punishment. [Citations.]" (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 988.) This is true whether the individual is in the residence at the time the perpetrator enters the residence or enters the residence during the commission of the burglary. Indeed, a person who enters his or her residence and surprises a perpetrator in the midst of committing a burglary is perhaps at greater risk of harm than a resident who is present in the residence when a burglar who thought the residence was empty enters the premises. Defendant's counsel herself argued during closing argument that "the reason why there was a [section] 667.5(c)(21) limit[] in credits is because of the fear of that escalation into

5

violence where actual human beings will be hurt and it will involve much more than monetary loss and breaking in of a house." The purpose of this enhancement is thus furthered by construing the burglary as continuing beyond the initial moment of entry.

The primary authority defendant cites to support his contention is not to the contrary. Quoting *People v. Garcia* (2004) 121 Cal.App.4th 271, 280, defendant asserts, "It is unquestionably the case that a 'burglary is committed when a person "enters any . . . building," including a "house," with intent to commit . . . larceny or any felony.' " The *Garcia* court considered two issues, first whether defendant was entitled to a jury trial on the question of whether a non-accomplice was present during the commission of a burglary, a question it answered in the negative. (*Id.* at p. 274.) The second issue concerned whether there was sufficient evidence to support the finding that a non-accomplice was present in the residence during the burglary, in light of evidence that the occupants of the house left through the front door after being startled by continuous "loud knocks" and "banging" at the back door. (*Id.* at pp. 275, 280.) In this context, the court observed, "The crime of burglary is committed when a person 'enters any . . . building,' including a 'house,' 'with intent to commit . . . larceny or any felony.' [Citation.] Any entry, partial or complete will suffice. [Citation.] '[A]n entry occurs for purposes of the burglary statute if any part of the intruder's body, or a tool or instrument wielded by the intruder is "inside the premises." [Citations.]' " (*Id*. at p. 280.) As can be seen, the court was commenting on when the burglary commenced, not the duration of the burglary, as is the issue before us.

In sum, we conclude the burglary continued beyond the moment of entry into the Engels' home and was still in progress when Christopher entered the home. Substantial evidence therefore supports the finding that a person other than an accomplice was present in the residence when defendant committed the burglary. (See *People v. Garcia, supra,* 121 Cal.App.4th at p. 280.)

## DISPOSITION

The judgment of conviction is affirmed.

6

                                         _____

                                         Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A140966; *People v. Mosley*