Filed 12/5/13  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>AARON RENAE JOHNSON,<br><br>　　　Defendant and Appellant. | B243271<br><br>(Los Angeles County<br>Super. Ct. No. YA082996) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eric C. Taylor, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Aaron Renae Johnson appeals from the judgment entered upon his conviction by jury of first degree burglary (Pen. Code, § 459, count 1),[1] and receiving stolen property (§ 496, subd. (a), count 2). Following a bifurcated bench trial, the trial court found true the allegations that appellant had suffered two prior convictions qualifying as both serious felonies (§ 667, subd. (a)(1)) and as strikes (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), the "Three Strikes" law), and two prior prison terms (§ 667.5). Prior to sentencing, the court denied appellant's *Romero*[2] motion to strike his prior strike convictions. The court sentenced appellant to an aggregate term of 62 years to life consisting of the following: 25 years to life on count 1; a consecutive 25 years to life on count 2; two consecutive five-year terms for the prior serious felony enhancements; and two consecutive one-year terms for the prior prison terms.

Appellant contends that (1) the trial court abused its discretion in denying his *Pitchess*[3] motion for discovery, (2) the trial court abused its discretion by allowing a police officer to give hearsay testimony, (3) the trial court erred in giving the reasonable doubt instruction (CALCRIM No. 2.20), (4) the trial court failed to provide a statement of reasons for imposing consecutive rather than concurrent terms, and (5) there was insufficient evidence to support the trial court's finding that appellant suffered a prior conviction for attempted burglary.

Finding no merit to appellant's contentions we affirm the judgment.

## FACTS

Laura Lee Fox shared a duplex townhouse on 190th Street in Redondo Beach with Vlasis Andrianopoulos. On December 7, 2011, Fox was expecting carpet cleaners whom she had used in the past to come to her unit. When she left for work that morning at 7:30 a.m. she locked all the doors and windows. She returned for lunch at 11:40 a.m. and

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

left again for work at 12:15 p.m. All of the windows and doors remained locked when she left the townhouse.

At 1:12 p.m., Kari Ross, Fox's neighbor, was watering the grass in her backyard when she heard a loud sound from the direction of Fox's townhouse. When she looked for the source of the sound, Ross saw that Fox's window frame was shoved up and the window blinds were shuffling. Ross saw the bottom portion of appellant's legs and feet as he entered the window. Appellant was wearing light-colored jeans and black and red tennis shoes. Ross called Fox at her workplace and told her what she had seen. Fox told Ross that she was expecting carpet cleaners who usually drove a white van and parked in the alley. Ross walked to the alley but did not see a white van. Instead, she saw a gray Honda car with no license plates in the alley. When Ross walked back towards Fox's secured patio area, the female driver of the Honda honked the car's horn. Ross and the driver of the Honda looked at each other for a moment and then the Honda drove east on 190th Street towards a nearby Lamps Plus store. Ross called 9-1-1 and while she was speaking to the 9-1-1 operator, she saw appellant walk out of Fox's driveway. Appellant was carrying a cardboard box. He wore black and red tennis shoes, light-colored jeans, and a beige top.

Special Investigations Unit detectives Michael Snakenborg of the Redondo Beach Police Department (RBPD), and Jonathan Sibbald of the Hermosa Beach Police Department, in plain clothes and separate unmarked cars, responded to the scene at 1:15 p.m. Detective Snakenborg saw Ross standing on the sidewalk and appellant walking ahead of her. Appellant was carrying a UPS-type box under his arm, and was wearing a beige jacket, blue jeans, and blue, black, and red tennis shoes. When appellant made a right turn and walked down a side street, Detective Snakenborg directed Detective Sibbald to appellant's location.

Detective Sibbald drove down the side street and turned right at an alley where he saw appellant leaning up against a cinder block wall. Appellant had his hands on the other side of the wall. When Detective Sibbald drove into the alley, appellant looked up and started walking. Detective Sibbald saw a glove drop from appellant's pocket. At

3

approximately 1:15 p.m. Norman Marshall was seated at the front of a nearby hobby shop. He saw appellant, who was wearing baggie blue jeans and a T-shirt, bent over a cinder block wall.

RBPD Officer Vincent Dileva responded to a call of a burglary in progress. Detective Snakenborg directed him to the side street where he had last seen appellant. Officer Dileva drove down the side street and turned right towards an alley. He saw appellant and Detective Sibbald in the alley. Officer Dileva made eye contact with appellant and ordered him to the ground. He conducted a pat down search of appellant and removed a black glove from appellant's pants pocket. RBPD Officer Jeffrey Sumners recovered a flathead screwdriver and a UPS-type box from behind the cinder block wall where Detective Sibbald and Marshall had seen appellant. The label on the UPS-type box contained Andrianopoulos's name and address. Officer Sumners also found a glove about 10 to 12 feet away from appellant; the glove appeared to match the one found on appellant. RBPD Officer Walter Sawall of the Crime Scene Investigations Unit obtained the flathead screwdriver from Officer Sumners and inspected the pry marks on Fox's window. The marks on the window appeared to match the tip of the screwdriver.

RBPD Detective Robert Carlborg responded to the burglary in progress call and received a description of the vehicle involved. He located the gray Honda and its female driver in the parking lot of a Lamps Plus store on 190th Street, approximately two blocks from Fox's townhouse.

Detective Snakenborg transported Ross to the location where appellant was detained and conducted a field show up. Ross identified appellant. Ross was then taken to the Lamps Plus parking lot for a second field show up and she identified the woman in the gray Honda. Ross also identified the Honda as the vehicle she had seen earlier in the alley behind Fox's townhouse. She was certain of all three identifications. Ross provided a detailed statement to Detective Snakenborg at her residence after the field show ups were concluded. She told him that she recognized appellant at the field show up based on his shoes and their red soles.

4

Fox inspected her townhouse and discovered her bedroom had been ransacked. The window screen was torn away and had been pried open. The window and shutters were damaged, some contents of a closet had been removed, and a "lamp on the headboard" by the shutters was broken. The printer cable had been pulled out and was missing. Andrianopoulos returned home around 2:00 p.m. on December 7, 2011. He confirmed that the item in the UPS-type box was a hair product he had ordered online. In the past, the boxed item was left at his front door if he was not home at the time of delivery.

## DISCUSSION

### I. Appellant's *Pitchess* Motion Was Properly Denied

Appellant contends that the trial court abused its discretion in denying his *Pitchess* motion for discovery of complaints in the personnel records of Officer Sumners, as well as Detectives Snakenborg and Sibbald.[4] We see no abuse of discretion.

The procedure to obtain peace officer personnel records is set forth in Evidence Code sections 1043 through 1045. "To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. (§ 1043, subd. (b)(3).) This two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).)

"To show good cause as required by section 1043, defense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence

---

[4] We note the record indicates that appellant filed a *Pitchess* motion with respect to Sumners, Snakenborg, and Sibbald on April 23, 2012, which was denied on May 16, 2012. A second *Pitchess* motion identical in all respects but pertaining only to Detective Sibbald was filed May 7, 2012, and denied on May 31, 2012. We treat appellant's argument as an appeal from the denial of both *Pitchess* motions.

or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick, supra,* 35 Cal.4th at p. 1024.)

The affidavit filed in support of a *Pitchess* motion must also "describe a factual scenario supporting the claimed officer misconduct." (*Warrick, supra,* 35 Cal.4th at p. 1024.) In some circumstances, the factual scenario "may consist of a denial of the facts asserted in the police report." (*Id.* at pp. 1024–1025.) Such a denial may establish a reasonable inference that the reporting officer may not have been truthful. (*Id.* at p. 1022.) This is not true for all cases. "What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Id.* at p. 1025.)

A trial court's denial of a *Pitchess* motion is reviewed for an abuse of discretion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)

Here, defense counsel argued that "a simple denial should be enough to grant a *Pitchess* motion." The trial court stated the declaration attached to the *Pitchess* motion did not address the UPS-type package that was alleged to have been in appellant's possession and there were "other issues" with the motion that were addressed in the People's opposition.

We agree with the trial court that the *Pitchess* motion was deficient. Contrary to appellant's assertion, he did not make a good cause showing by merely denying the relevant specific facts alleged in the officers' report. The circumstances in this case are not of the type referred to in *Warrick* for which a mere denial of the officer's report may suffice. (*Warrick, supra,* 35 Cal.4th at pp. 1024–1025.) Appellant's sole claim is that he was detained because he was an African-American walking in the City of Redondo Beach. The declaration did not present a factual account of the scope of the alleged police misconduct or explained appellant's own actions in a manner that adequately supported his defense. (See *People v. Thompson* (2006) 141 Cal.App.4th 1312, 1317 [court rejected defendant's explanation because it did not present a factual account of the scope of the alleged police misconduct].)

6

Appellant has not set forth a proposed defense, established a plausible factual foundation for the alleged officer misconduct, or articulated a valid theory as to how the requested information might be admissible at trial. Given the foregoing circumstances, appellant was not entitled to have the trial court review the requested records in camera to determine what information, if any, should be disclosed. (*People v. Gaines* (2009) 46 Cal.4th 172, 178–179.) The trial court did not abuse its discretion by denying appellant's *Pitchess* motion.

## II. Detective Snakenborg's Testimony Was Admissible

Appellant contends the trial court erred by admitting prejudicial hearsay testimony. Specifically, appellant contends that Detective Snakenborg should not have been permitted to testify that Ross told him, after the field show up, that she was able to identify appellant based on the color of his shoes and their soles. The People argue the testimony is admissible given defense counsel's challenge of Ross's credibility during cross-examination.

Evidence Code section 1236 provides, "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with Section 791." Evidence Code section 791 provides, "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: [¶] (a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or [¶] (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." We review the trial court's evidentiary ruling for an abuse of discretion. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113 (overruled on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151) ["'trial court' ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court

exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice"].)

""""[R]ecent fabrication may be inferred when it is shown that a witness did not speak about an important matter at a time when it would have been natural for him to do so,'" and in such a circumstance, 'it is generally proper to permit rehabilitation by a prior consistent statement.' [Citations.]" (*People v. Riccardi* (2012) 54 Cal.4th 758, 803.) As explained in *People v. Gentry* (1969) 270 Cal.App.2d 462 (*Gentry*), if the consistent statement occurs after an improper motive is alleged to have arisen, the statement is inadmissible because "when there is a contradiction between the testimony of two witnesses it cannot help the trier of fact in deciding between them merely to show that one of the witnesses has asserted the same thing previously. 'If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible.' [Citation.] . . . Different considerations come into play when a charge of recent fabrication is made *by negative evidence* that the witness did not speak of the matter before when it would have been natural to speak. His silence then is urged as inconsistent with his utterances at the trial. The evidence of consistent statements at that point becomes proper because 'the supposed fact of not speaking formerly, from which we are to infer a recent contrivance of the story, is disposed of by denying it to be a fact, inasmuch as the witness did speak and tell the same story.'" (*Id.* at p. 473; see *Riccardi, supra,* at p. 803.)

Ross testified on direct examination that she saw the color of appellant's shoes as he entered the window of Fox's townhouse. An audio recording of the 9-1-1 call made by Ross was played for the jury. During cross-examination, defense counsel asked Ross if she provided the 9-1-1 operator with a description of appellant including the color of his shirt, pants, and shoes. When Ross responded in the affirmative, defense counsel questioned whether a description of the shoes was on the 9-1-1 recording. Defense counsel proceeded to suggest that Ross never saw the color of appellant's shoes during the perpetration of the crime and observed them for the first time at the field show up when appellant was sitting on the sidewalk and his shoes and their soles were visible.

8

Appellant argues, as did defense counsel before the trial court, that Detective Snakenborg's testimony was inadmissible because Ross's credibility was not under attack. That argument is unpersuasive. Counsel was clearly attacking Ross's credibility by trying to show that during the 9-1-1 call Ross described several items of appellant's clothing but never described the shoes even though she maintained she saw them when appellant entered the townhouse through the window. Appellant presented a mistaken identity defense and sought to undermine the reliability of Ross's identification by showing that her silence during the 9-1-1 call was inconsistent with her trial testimony.

The trial court reasonably could conclude defense counsel implicitly accused Ross of fabricating her testimony at trial. Appellant further contends the court erred "because Ms. Ross'[s] prior consistent statement . . . was not made before an inconsistent statement." But this ignores the rule stated in *Gentry* that when "silence . . . is urged as inconsistent with [the witness's] utterances at the trial," evidence of statements consistent with the witness's trial testimony, made before trial and after the silence, are admissible to rehabilitate the witness. (*Gentry, supra,* 270 Cal.App.2d at p. 473.) The trial court did not abuse its discretion in permitting Detective Snakenborg to testify regarding the statements Ross made to him after the field show up.

## III. No Instructional Error Regarding the Burden of Proof

Appellant contends that the instructions failed to inform the jury that all elements of the charged offenses and enhancements must be proven beyond a reasonable doubt. The same argument was rejected in *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087 through 1088, and is rejected here.

The trial court used the language of CALCRIM No. 220 to instruct the jury regarding the prosecution's burden of proof. In other instructions, it instructed the jury regarding each element that the prosecution had to prove for each of the charged offenses, and the enhancement instruction specified the "reasonable doubt" standard. Reading the instructions as a whole, there is no reasonable likelihood that the jurors, who are intelligent persons capable of understanding and correlating all instructions, did not

9

understand that each element of the charged offenses and enhancements had to be proven beyond a reasonable doubt.  (*People v. Ramos, supra,* 163 Cal.App.4th at p. 1088.)

## IV.     Appellant Forfeited His Challenge to the Trial Court's Statement of Reasons

Appellant contends the trial court erred by failing to state its reason for imposing consecutive sentences.  The People contend appellant forfeited his claim of violation of sentencing rules concerning a statement of reasons because he did not object in the trial court.

To begin with, the sentencing rules, with their statement of reasons requirements, have no application to indeterminate sentences (Cal. Rules of Court, rule 4.403; *People v. Black* (2007) 41 Cal.4th 799, 823; *People v. Felix* (2000) 22 Cal.4th 651, 658–659) and the trial court correctly applied California sentencing laws.  In any event, defense counsel's failure to object and request the court's reasoning for imposing consecutive sentences forfeited the issue on appeal.  (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84 [finding waiver when counsel had a meaningful opportunity to object to court's sentencing choice but failed to do so].)

Our Supreme Court has stated:  "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices.  Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, *or failed to state any reasons* or give a sufficient number of valid reasons."  (*People v. Scott* (1994) 9 Cal.4th 331, 353, italics added.)  "In essence, claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner."  (*Id.* at p. 354.)  *Scott* identified among those discretionary sentencing decisions, the decision to order probation, to impose the upper, lower or middle term, and to impose consecutive rather than concurrent sentences.  (*Id.* at p. 349.)

Appellant was on notice that he could be sentenced to consecutive terms on both counts.  During discussions prior to trial, defense counsel stated that appellant was "not

10

interested in a counteroffer" to the prosecution's plea offer. The trial court noted that this was a third strike case because the prior burglaries constituted strikes and the following colloquy took place regarding a potential sentence if appellant was found guilty:

"[DEFENSE COUNSEL]: I believe it's sixty to life.

"[THE PROSECUTOR]: If it was just count 1, I have 39 to life. But if you add to 25-to-life on the 496—

"[THE COURT]: So sixty to life if he is convicted."

It is clear from the record the trial court exercised its discretion in imposing consecutive sentences and nothing in the record suggests the court erroneously believed consecutive sentences were mandatory. (See *People v. Alvarado* (2001) 87 Cal.App.4th 178, 195, fn. 5 [remand appropriate if record clearly established trial court incorrectly thought consecutive sentences were mandatory, not discretionary].) At the sentencing hearing, the court stated it reviewed the sentencing memorandum submitted by the prosecution[5] and asked if appellant wished to be heard before sentencing. Appellant did not, and likewise failed to object once the court pronounced sentence. Thus, appellant has forfeited any objection to the court's failure to state its reasons for imposing a consecutive sentence on count 2.

## V.     Sufficient Evidence of Fact of Prior Conviction

Pursuant to the Three Strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and section 667, subdivision (a)(1), the prosecution alleged that appellant suffered two prior convictions of a serious or violent felony. Specifically, the prosecution alleged appellant suffered a prior conviction for attempted first degree burglary (§§ 664/459) in Superior Court case No. BA251043, and first degree burglary (§ 459) in Superior Court

---

[5]     The memorandum stated appellant's potential maximum exposure was 62 years to life in state prison, the sentence imposed by the trial court.

case No. BA250588.**6** Following a jury trial on the substantive offenses, the trial court found that appellant suffered all of the prior convictions including the attempted first degree burglary in case No. BA251043. Appellant contends that the documentary evidence the prosecution presented did not establish a conviction in case No. BA251043 because there was no abstract of judgment and the trial court relied on evidence outside the record of conviction. We disagree.

The prosecution has the burden "to prove beyond a reasonable doubt those alleged prior convictions challenged by a defendant." (*In re Yurko* (1974) 10 Cal.3d 857, 862.) We apply a substantial evidence standard of review in evaluating a challenge to a trial court's finding that the defendant incurred a prior strike or prior serious felony conviction. (See *People v. Delgado* (2008) 43 Cal.4th 1059, 1067.) "In reviewing the sufficiency of the evidence of the prior convictions, we determine '". . . whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt. In making this determination, [we] must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment.'"'" (*People v. Jones* (1995) 37 Cal.App.4th 1312, 1315.)

Max Wheatley, the district attorney's paralegal charged with providing the documentation necessary to prove allegations of prior convictions, testified that an abstract of judgment in Superior Court case No. BA307714 showed that appellant had been convicted of false imprisonment and infliction of corporal injury on a spouse on November 16, 2006. Wheatley also testified that an abstract of judgment in Superior Court case No. BA250588 showed that appellant had been convicted of first degree burglary on August 8, 2003. Wheatley then testified regarding two certified documents from the Los Angeles Police Department regarding Superior Court case No. BA251043. The first was a booking slip for appellant, and the second was a disposition of arrest and

---

**6** The information also alleged that appellant had suffered prior convictions for false imprisonment (§ 236) and infliction of corporal injury on a spouse (§ 273.5, subd. (a)) in Superior Court case No. BA307714.

12

court action which indicated that appellant was convicted of attempted first degree burglary on August 8, 2003. The trial court granted the prosecution's request to take judicial notice of the court file in Superior Court case No. BA251043. The court file included the complaint which indicated count 1 was attempted first degree burglary, and the felony plea transcript which indicated that a plea on case No. BA251043 was taken concurrently with the plea in case No. BA250588.

While the prosecution is "precluded from presenting any evidence *outside the record of conviction* to prove the circumstances of the prior crime" (*People v. Reed* (1996) 13 Cal.4th 217, 225) the trial court "may look to the entire record of the conviction" (*People v. Thoma* (2007) 150 Cal.App.4th 1096, 1101). Here, although there was no abstract of judgment in case No. BA251043, the court record included sufficient documentary evidence to establish a conviction. (See *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [the record of the prior conviction may include the charging documents and no contest plea, change of plea form, a complaint, and a reporter's transcript of the defendant's guilty plea together with the information].)

We conclude that the documentary evidence relied on by the court sufficiently established appellant's conviction in Superior Court case No. BA251043.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14