Filed 2/8/16  P. v. Zelaya CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DANNY ZELAYA,<br><br>        Defendant and Appellant. | A143200<br><br>(Contra Costa County<br>Super. Ct. No. 051409002) |

**I.**

**INTRODUCTION**

A jury convicted appellant Danny Zelaya of five counts of sexually abusing his girlfriend's niece, Jane Doe, over a period of three years.  Zelaya argues that there was insufficient evidence that the sexual penetration supporting his conviction pursuant to Penal Code section 288.7, subdivision (b)[1] was committed when the victim was 10 years old or younger.  He further contends his sentence of 15 years to life for this offense constitutes cruel and unusual punishment under both the federal and state constitutions. We affirm.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The Contra Costa County District Attorney filed an information charging Zelaya in counts one and three with sexual acts with a child 10 years old or younger (§ 288.7,

---

[1]  All further undesignated statutory references are to the Penal Code.

1

subd. (b)), and in counts two, four, five, and six with lewd acts upon a child under age 14 (§ 288, subd. (a)).[2] At trial, the information was amended to allege for counts two, four, five, and six, Zelaya engaged in substantial sexual conduct pursuant to section 1203.066, subdivision (a)(8).

### *Evidence at Trial*

Zelaya was the boyfriend of Jane Doe's aunt, E. Zelaya and E. lived in three locations: the first was an apartment on North Broadway Avenue in Bay Point, then a house on Vista Way in Antioch, followed by another house on Texas Street in Antioch. E. testified that they lived in the Bay Point apartment from approximately March 2010 until August 2010. She and Zelaya moved to the Texas Street house in approximately May 2013. E. would regularly babysit Jane Doe and her sister.

Jane Doe's mother (mother) noticed a change in Jane Doe's behavior in 2013. Jane Doe had become angry, she wanted to spend time alone, and her grades dropped at school. In fall 2013, mother found Jane Doe crying in her room and Jane Doe told her Zelaya had been touching her. Jane Doe said it started in Bay Point (in 2010). Mother reported the abuse to the police.

Antioch Police Department Sergeant Santiago Castillo conducted a recorded interview of Jane Doe. In the interview, which was played for the jury, she described the abuse. She said the first touching occurred when she was eight years old. She said Zelaya pulled her into the bedroom and said "Let me touch you." He touched her breasts under her shirt and touched her on "top and bottom" on her bare skin. He told her "[t]his is our secret" and she should not tell anyone or he would go to jail. She said it happened at the Bay Point apartment more than 20 times when she was eight and nine years old. She said it stopped between ages nine and ten when E. and Zelaya moved to a different house, and then started again in their current house. In his current house, he touched her

---

[2] Zelaya was also charged with two counts of forcible lewd acts upon a child under age 14 (§ 288, subd. (b)(1)) for conduct related to Jane Doe 2 (Jane Doe's sister), but he was not convicted of these counts at trial. Zelaya was also acquitted of one count (count three, § 288, subd. (b)) related to Jane Doe.

under her clothing on her vagina. Zelaya encouraged her to touch his penis but she refused. Jane Doe stated that it happened "pretty much every time" she saw Zelaya.

Jane Doe was also interviewed at the Children's Interview Center (CIC) and the recording was played for the jury. Jane Doe stated that Zelaya began touching her when she was eight years old. She described the first incident when she was eight years old in the bedroom as Zelaya unzipping her shorts. She said the shorts were "really tight" so he had to unzip the zipper. Then he was "squishing" her under her clothes and touching her "deep hole pocket" or her "heiny." She said the first time he "squished" her breasts touching her skin and "squish[ed]" her vaginal area over her panties. She said when she was 10 years old, Zelaya sucked her breasts. When she was 10 and 11, he began rubbing her under her panties.

When the interviewer asked Jane Doe if Zelaya ever put his hands inside her body when he was rubbing her underneath her panties, she said that on one occasion, he put his finger in her "guts." She said it happened when her aunt asked Zelaya to go to the Mi Pueblo grocery store and he took her with him. She said that Zelaya told her that if she let him touch her, he would buy her chips. She said: "He would go in the guts and get the juicy thing and squishy and slimy thing and eat it." She then said that "sometimes when I pee I forget to wipe" and it leaves something "slimy." The interviewer said that it was okay to forget to wipe and Jane Doe responded, "Well, I'm eleven years old, I'm not supposed to forget." The interviewer asked her what she was wearing, and she responded "the same shorts, the tight shorts." She said Zelaya undid the zipper.

At the time of trial Jane Doe was 11 years old (she was born in 2002). Jane Doe testified that Zelaya and E. had lived in three places: an apartment and two houses. She testified Zelaya touched her at the apartment and the last house. During trial, Jane Doe was emotional so she was unable to explain the details of the touching. She testified that Zelaya touched her in a car when they went to a "Mexican store." She did not remember how old she was when it happened, but it was when Zelaya lived at the Bay Point apartment. Her Aunt E., however, testified that she never sent Zelaya to the store with

3

Jane Doe. E. explained that the children never rode in the car with her or Zelaya because they did not have car seats.

The jury heard two recorded interviews between Zelaya and Sergeant Castillo. When Zelaya was initially interviewed at his home, he immediately admitted his conduct. He admitted the abuse began at the Bay Point apartment and continued for three years. He initially agreed that he had touched Jane Doe more than 50 times, but later in the interview, he said it only happened a few times. He admitted to touching her under her shirt and on the outside of her panties, but claimed he never touched her vagina. He later said that he may have touched inside her panties one time. He explained that he touched her because he would "start feeling something weird in my body." He said there something bad inside of him and he cannot control it. He repeatedly said that Jane Doe was not lying. Zelaya stated that he would "have to pay with jail for what I did."

Dr. Jim Carpenter, a pediatrician specializing in child abuse pediatrics, testified about the structure of female genitalia and the sexual maturation of girls. During his testimony, he explained some girls enter puberty as early as eight or nine years old and some as late as 17 or 18 years old. He said the average age is between 9 and 12 years old. He said that prepubertal girls may have vaginal discharge; it is often the first sign of puberty. He testified 11 years old is a "common age" for discharge to be present.

### Zelaya's Section 1118.1 Motion

During trial, Zelaya made a motion for judgment of acquittal pursuant to section 1118.1 for counts one and three because there was no evidence that Jane Doe was 10 years old or younger when the sexual penetration occurred. The prosecutor argued that Jane Doe testified that the touching in the car occurred when Zelaya lived at the Bay Point apartment in 2010 when Jane Doe was under the age of 10. The court denied the motion, stating there was sufficient evidence for the counts to go to the jury.

### Jury Verdict

The jury found Zelaya guilty of count one: sexual acts with a child 10 years or old or younger (§ 288.7, subd. (b)), and counts two, four, five and six: lewd acts upon a child under age 14 (§ 288, subd. (a)). The jury acquitted Zelaya of count three (§ 288.7, subd.

4

(b)) and counts seven and eight (§ 288, subd. (b)(1)) related to Jane Doe 2. The jury found not true that in counts two, four, five, and six, Zelaya engaged in substantial sexual conduct pursuant to section 1203.066, subdivision (a)(7) against more than one victim. The jury further found not true that Zelaya was guilty of two or more sex offenses against more than one victim pursuant to section 667.61, subdivision (e)(4).

### *Sentencing*

At the sentencing hearing, the prosecutor read a letter from Jane Doe's mother addressing the impact the abuse had on her daughters and her family. She described Jane Doe as having great difficulty overcoming the incident. Jane Doe "loses all interest in her normal routine and lives in an imaginary world." Mother stated she felt guilty for what happened to her daughters and felt as though she cannot move forward with her life.

The prosecutor argued that although Zelaya has no criminal history and acknowledged the crimes, his conduct in victimizing Jane Doe occurred over a period of three years. The prosecutor requested a sentence of 29 years to life. Zelaya's counsel argued for sentence of 15 years to life. He contended that although all crimes involving abuse of a child are egregious, this case did not involve sexual intercourse, threats, or use of force.

The court found: "[I]t is hard to argue about the severity of the conduct by the defendant when one sees the [e]ffect of the conduct on Jane Doe. It is such a tragedy." The court found that Zelaya took advantage of a position of trust as a family member and the crimes were committed at different times in different places over a period of years. The court noted, in mitigation, Zelaya had no criminal record and there was an early acknowledgment of wrongdoing. The court stated "while it was a little chilling [to hear] Mr. Zelaya's description of how he feels when he saw a woman—young, young, woman, a girl of Jane [Doe's] age, how that made him feel physically, it also was a certain frankness and directness that we don't hear from sex offenders either until they've undergone quite a bit of treatment."

The court then imposed a total sentence of 21 years to life. The sentence consisted of an indeterminate term of 15 years to life on count one and determinate terms of six

years for counts two, four, five, and six.  For counts two, four, five, and six, the court selected the mid-term of six years for each count, but ordered the six-year terms to be served concurrently.  The court further ordered the determinate six-year term as to count two to run consecutively to the indeterminate term of 15 years to life on count one.

## III.

## DISCUSSION

### A.  *The Evidence was Sufficient to Establish Count One*

Zelaya argues that there was insufficient evidence that Jane Doe was younger than 10 years old when he sexually penetrated her.  The incident that established count one was a trip to the grocery store where Zelaya inserted his finger into Jane Doe's vagina. Zelaya contends there was conflicting testimony as to when this incident occurred and it may have been when Jane Doe was 11 years old.

In reviewing Zelaya's claim of insufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]"  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  "We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. . . ."  (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028, citing *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*).)

Section 288.7 subdivision (b) provides: "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life."  (§ 288.7, subd. (b).)  The statute defines sexual penetration as "the act of causing the penetration, however slight, of the genital or anal opening of any person" for the purpose of sexual arousal or gratification.  (§ 289, subd. (k)(1).)  Thus, "sexual penetration" does not have to be

vaginal penetration but only penetration of the labia, not the vagina. (See *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371.)

For purposes of section 288.7, a child is "10 years of age or younger" if the minor has not yet reached his or her 11th birthday as of the time of the sexual assault. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265-1266.)

The prosecution presented substantial evidence that the sexual penetration occurred when Jane Doe was younger than 11 years old. Jane Doe testified at trial Zelaya touched her in a car when they went to a "Mexican store." She did not remember how old she was when it happened, but it was when Zelaya lived at the Bay Point apartment. The testimony at trial established Zelaya lived at the Bay Point apartment when Jane Doe was eight years old.

During the CIC interview, Jane Doe described the incident when Zelaya touched her under her panties and put his finger in her "guts." She again said it happened in the car when they went to the Mexican grocery store. She said: "He would go in the guts and get the juicy thing and squishy and slimy thing and eat it." The CIC interviewer did not ask her how old she was when this occurred, but Jane Doe described that she was wearing "the same shorts, the tight shorts." She had earlier described the "tight shorts" when discussing the very first time Zelaya touched her at the Bay Point apartment. She said when she was eight years old, she had on tight shorts and he had to unzip the zipper to be able to touch her panties.

From Jane Doe's testimony, viewing the evidence in the light most favorable to the prosecution, the jury could reasonably conclude that the sexual penetration occurred when Jane Doe was eight years old. At trial, she testified the incident occurred when Zelaya lived at the Bay Point apartment in 2010 when Jane Doe was eight years old. Also, both at the CIC interview and at trial, Jane Doe described the penetration as happening on the car ride to the Mexican grocery store. In the CIC interview, she described wearing the same tight shorts as when Zelaya first touched her at age eight.

Zelaya's argument to the contrary is that Jane Doe's description of vaginal discharge was consistent with a girl at the onset of puberty, not an eight year old. Zelaya

7

relies on the testimony of Dr. Carpenter that girls begin to have a white discharge when they enter puberty. However, Dr. Carpenter explained that girls may enter puberty as early as eight years old, or as late as 17 or 18 years old. He said the average age is between 9 and 12 years old. He also testified that "prepubertal" girls may have vaginal discharge. While he stated that 11 years old is a "common age" for discharge to be present, it could be present earlier. As respondent makes clear, Dr. Carpenter did not testify about when Jane Doe began puberty.

There was also evidence that the substance Jane Doe referred to during the incident was urine and not vaginal discharge. Jane Doe stated "sometimes when I pee I forget to wipe" and it leaves something "slimy." The interviewer said that it was okay to forget to wipe and Jane Doe responded "Well, I'm eleven years old, I'm not supposed to forget." Zelaya interprets this to mean that the incident must have happened when she was 11 years old. However, it could also be reasonably interpreted that she has sometimes forgotten to wipe for months or years and she should no longer forget because she was now 11 years old at the time she testified.

The jury heard all the evidence and as a rational trier of fact could find Zelaya guilty of sexual penetration of a child under 10 years old. (See *Ochoa*, *supra*, 6 Cal.4th at p. 1206 [" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' "].) Resolving all conflicts in favor of the prosecution, we conclude there was sufficient evidence to support Zelaya's conviction on count one.

**B.      *Zelaya's Sentence Does Not Constitute Cruel and Unusual Punishment***

Zelaya contends that his sentence constitutes cruel and unusual punishment under both the United States and California Constitutions.

Zelaya's sentence of 15 years to life on count one was mandated by statute. (§ 288.7, subd. (b).) The court imposed a total sentence of 21 years to life consisting of 15 years to life on count one, and a mid-range term of six years on counts two, four, five

8

and six, with the six-year term as to count two to run consecutive to the 15-year term as to count one.

A punishment violates the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime." (*Gregg v. Georgia* (1976) 428 U.S. 153, 173.) "[I]n California a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) Under *Lynch* we examine (1) the nature of the offender, (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction, and (3) compare the punishment with the penalty for more serious crimes in other jurisdictions. (*Id.* at pp. 425–427.)

Zelaya contends neither the circumstances of the offense nor his personal characteristics justify a sentence of 15 years to life on count one. He argues the offense was not aggravated because there was no sexual intercourse, no weapons used, no threats, and no physical harm to the victim. Zelaya was a young man in his early 20's and he had no criminal record.

The court addressed a similar argument in *People v. Alvarado* (2001) 87 Cal.App.4th 178 (*Alvarado*.) The defendant was convicted of rape of an elderly woman during the commission of a burglary and sentenced pursuant to statute to the mandatory term of 15 years to life. He argued that his troubled background, lack of a criminal record, and sincere remorse militated for a more lenient punishment. (*Id.* at p. 199.) The court concluded that despite his age and the fact he acknowledged his actions upon being caught, his callous assault of a vulnerable victim warranted harsh punishment. (*Id.* at pp. 199-200; see also *People v. Estrada* (1997) 57 Cal.App.4th 1270 [holding a sentence of 25 years to life for forcible rape in the course of a burglary was not cruel and unusual punishment where the defendant, who had no prior felony convictions, used no weapon, made no threats and expressed remorse].)

Zelaya relies on *In re Rodriguez* (1975) 14 Cal.3d 639 (*Rodriguez*) to argue his punishment is disproportionate to the crime.  The defendant in *Rodriguez* was convicted of violating section 288 (committing a lewd or lascivious act on a child under age of 14) and sentenced to an indeterminate term of one year to life.  (*Id.* at p. 642.) The defendant filed a writ of habeas corpus after serving 22 years, arguing the indeterminate penalty of one year to life in prison constituted cruel and unusual punishment in violation of the federal and state Constitutions.  (*Id.* at pp. 642–643.)  Our Supreme Court held the indeterminate sentence under section 288 on its face was not unconstitutional.  (*Id.* at p. 648.)  But the law, as applied to the defendant, "has resulted in the imposition of cruel and unusual punishment."  (*Id.* at p. 651.)

The high court concluded that the defendant's fondling of a six-year-old child, although not "trivial," was not committed in a violent manner or with a weapon, lasted only a few minutes, and caused the victim no harm.  (*Rodriguez*, *supra*, 14 Cal.3d at pp. 654–655.)  The defendant was 26 years old when he committed the offense, had a low IQ of about 68 and was functionally illiterate and unskilled.  (*Id.* at p. 644, fn. 6.)  The court believed "[h]is conduct was explained in part by his limited intelligence, his frustrations brought on by intellectual and sexual inadequacy, and his inability to cope with these problems."  (*Id.* at p. 655.)  The defendant had no criminal history "apart from problems associated with his sexual maladjustment."  (*Ibid.*)  The court held the 22 years he had already served was disproportionate to the offense considering shorter maximum terms imposed for more serious crimes.  (*Ibid.*)  The court concluded because the defendant had already served a term which was disproportionate to the offense, his continued imprisonment would constitute cruel and unusual punishment.  (*Ibid.*)

*Rodriguez* is distinguishable.  Nothing in the record suggests Zelaya possesses a low IQ, is illiterate or unskilled, or coping with problems of sexual inadequacy.  Perhaps as important as any distinguishing facts are that, unlike *Rodriguez*, where the assault was a single act lasting three minutes, here the sexual misconduct occurred over a period of *three years*, and the victim demonstrably and understandably suffered greatly from her ordeal.  *Rodriguez* does not hold the indeterminate life sentence under section 288 is

unconstitutional, but that the 22 years the defendant had served was disproportionate to his offense. Here, the minimum term of 15 years imposed upon Zelaya for count one is not unconstitutional under *Rodriguez.*

Zelaya compares his sentence to someone convicted of murder and claims his sentence is unconstitutionally disproportionate. Zelaya, however, fails to recognize that he was convicted of not one but five felonies. "[T]he commission of a single act of murder, while heinous and severely punished, cannot be compared with the commission of multiple felonies. [Citation.]" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 826.) Zelaya repeatedly molested Jane Doe, a vulnerable child, over a period of three years. According to Jane Doe, Zelaya touched her every "pretty much every time" she saw him.

But, contrary to the authorities cited by Zelaya, there are a host of cases with similar sentences for sexual assault that have been upheld on appeal. (See *Alvarado*, *supra*, 87 Cal.App.4th 178 [upholding a life term for rape committed during a burglary against a challenge the sentence was cruel and unusual punishment]; *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093–1094 [upholding sentence of 15 years to life for a defendant convicted of a single lewd act with a 12 year old who became pregnant]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123 [upholding indeterminate term of 375 plus a determinate term of 53 years for sexual assault charges; *People v. Retanan* (2007) 154 Cal.App.4th 1219 [upholding sentence of 135 years to life against a cruel and unusual punishment challenge for defendant's sexual assaults of three young girls].)

"[G]reat deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*In re Wells* (1975) 46 Cal.App.3d 592, 599.) Zelaya's punishment "merely reflects the Legislature's zero tolerance toward the commission of sexual offenses against particularly vulnerable victims. It does not, however, render a defendant's sentence excessive as a matter of law in every case." (*Alvarado*, *supra*, 87 Cal.App.4th at pp. 200–201.)[3]

---

[3] Zelaya does not address the third factor identified in *In re Lynch*, *supra*, 8 Cal.3d 410: his penalty compared to the same offense in other jurisdictions.

Zelaya has failed to demonstrate that his sentence is so disproportionate to his crimes that it shocks the conscience or offends fundamental notions of human dignity. (See *People v. Dillon* (1983) 34 Cal.3d 441, 477–478.)

## IV.

## DISPOSITION

The judgment is affirmed.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
STREETER, J.