Filed 8/23/18

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANNY JERRY CORDER,<br><br>        Defendant and Appellant. | C084565<br><br>(Super. Ct. No. F1600107) |

APPEAL from a judgment of the Superior Court of Plumas County, Ira Kaufman, Judge.  Affirmed.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendant Danny Jerry Corder was convicted of four counts of assault on a peace officer with a deadly weapon or by means likely to produce great bodily injury, one count of felony evading a peace officer while driving in a reckless

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV of the Discussion.

1

manner, and two counts of resisting an officer, along with an enhancement for personally inflicting great bodily injury. The trial court imposed a 12-year state prison term.

On appeal, defendant contends: (1) he cannot be convicted of felony evasion for driving that took place only on private roads; (2) there is insufficient evidence to sustain the felony evasion conviction; and (3) sentencing on the felony evasion count should have been stayed pursuant to Penal Code section 654. He additionally asks us to conduct an independent review of the trial court's ruling on his *Pitchess*[1] motion. We affirm.

BACKGROUND

In February 2016, codefendant Annette Payne lived with her family on a 30-acre family property on Cemetery Road in Portola. Defendant was her boyfriend at the time and often stayed on the property with her.

On February 4, 2016, at about 9:40 p.m., Plumas County Deputy Sheriffs Bjorn Berg, Tom Klundby, and Jeremy Beatley entered the property to conduct a probation search on Payne. The deputies arrived in two marked vehicles and were in uniform. They parked about 100 feet from the Payne residence and approached it on foot. As they walked up the driveway, Deputy Beatley heard a pickup truck start its engine. He shone his flashlight at the truck and saw defendant, who Deputies Beatley and Klundby knew had a suspended driver's license.

Deputy Beatley shone his flashlight on himself so defendant would know he was a law enforcement officer. Defendant drove his truck at the deputies. The deputies jumped or ran to avoid being run over. Defendant drove within eight to 12 feet of the deputies, then made a U-turn and went back in the direction from whence he came.

The deputies entered their respective vehicles, activated the emergency lights and flashers, and pursued defendant. The vehicles drove at around 30 to 35 miles per hour,

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

an unsafe speed in the rough terrain in which the pursuit was conducted, which caused the deputies to be concerned for their safety and possible damage to their vehicles.

Defendant eventually drove past the house; he came within five to 10 feet and was driving 30 miles per hour. Upon passing the house, he turned onto a sagebrush field, stopped, and got out of his truck. Deputies Klundby and Berg got out of their vehicle. Standing by the door with their guns drawn, they told defendant to stop and put his hands in the air. Defendant got back in his truck and drove off, with the deputies in pursuit.

Deputy Beatley eventually stopped pursuing as there was too great a risk of rolling his vehicle in the rough terrain. Deputies Berg and Klundby likewise ended the pursuit after coming to a large mound they could not drive over. The deputies drove back to Payne's house, to which defendant had returned, parking their vehicles next to defendant's truck. After defendant refused to leave the truck or unlock his doors, Deputy Klundby smashed the driver's side window and opened the door. Defendant fought deputies Klundby and Berg as they extricated him from the truck, kicking at them and striking them with his fists. Ignoring orders to stop resisting, defendant was not removed from the truck until Deputy Beatley "Tased" him. Defendant continued resisting after he was removed from the truck but the deputies managed to handcuff him. Deputy Berg sustained a broken bone in his hand as a result of getting it kicked or pinned to the door by defendant's construction boot.

Testifying on his own behalf, defendant denied trying to run over the deputies and claimed he did not see them. He did not know the deputies were behind him until he passed the house. Defendant did not stop at that point because he was afraid of them; deputies Beatley and Berg had threatened to kill him if they caught him alone. Defendant wanted witnesses present when he stopped. The deputies beat and "Tasered" him without cause. He did not kick Deputy Berg's hand into his truck's door.

Defendant and Payne both testified that the area was a private road, starting after the location of the cemetery on Cemetery Road.

3

DISCUSSION

I

*Conviction For Crime Occurring On Private Roads*

Defendant contends the felony evasion conviction cannot stand because the crime does not apply to driving on private roads.

He relies on Vehicle Code[2] section 21107.7, subdivision (a) which provides in pertinent part:

"Any city or county may, by ordinance or resolution, find and declare that there are privately owned and maintained roads as described in the ordinance or resolution within the city or county that are not generally held open for use of the public for purposes of vehicular travel but, by reason of their proximity to or connection with highways, the interests of any residents residing along the roads and the motoring public will best be served by *application of the provisions of this code to those roads*. No ordinance or resolution shall be enacted unless there is first filed with the city or county a petition requesting it by a majority of the owners of any privately owned and maintained road, or by at least a majority of the board of directors of a common interest development, as defined by Section 4100 or 6534 of the Civil Code, that is responsible for maintaining the road, and without a public hearing thereon and 10 days' prior written notice to all owners of the road or all of the owners in the development. Upon enactment of the ordinance or resolution, the provisions of this code shall apply to the privately owned and maintained road if appropriate signs are erected at the entrance to the road of the size, shape, and color as to be readily legible during daylight hours from a distance of 100 feet, to the effect that the road is subject to the provisions of this code. The city or county may impose reasonable conditions and may authorize the owners, or board of

---

[2] Undesignated statutory references are to the Vehicle Code.

directors of the common interest development, to erect traffic signs, signals, markings, and devices which conform to the uniform standards and specifications adopted by the Department of Transportation." (Italics added.)

Defendant's argument centers on the phrase "application of the provisions of this code to those roads." According to defendant, the plain language of this provision means felony evasion, a crime defined in the Vehicle Code, applies only to driving on public roads or private roads subject to the Vehicle Code through section 21107.7. Since the evasion and pursuit took place on private property, defendant argues the conviction must be reversed.

"Our primary duty when interpreting a statute is to ' "determine and effectuate" ' the Legislature's intent. [Citation.] To that end, our first task is to examine the words of the statute, giving them a commonsense meaning. [Citation.] If the language is clear and unambiguous, the inquiry ends. [Citation.] However, a statute's language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 326, fn. omitted.)

Section 21107.7, and in particular, the phrase, "application of the provisions of this code to those roads," can be understood only in the context of the relevant statutory scheme. This statute is part of Chapter 11 of the Vehicle Code, which defines and applies the *rules of the road*. Their applicability is set forth in section 21001, which states, "The provisions of this division refer exclusively to the operation of vehicles upon the highways, unless a different place is specifically referred to."

The Legislative Counsel Report on the statute, dated June 28, 1963, stated that section 21107.7:

"Provides that a city or county may by ordinance declare that designated privately owned and maintained roads are not generally held open for use of the public for purposes of vehicular traffic, but because of their proximity to or connection with

5

highways the interests of persons residing along such roads and persons using such roads will best be served by the application of certain provisions of the Vehicle Code to such roads.  Provides city or county may act only if a petition is filed by at least a majority of owners of such road and after a hearing.  The applicable provisions of the Vehicle Code would not be applicable until signs are posted.  The California Highway Patrol would be required only to enforce provisions of the Vehicle Code on such a road that would otherwise be applicable to such road notwithstanding action taken under this section."

We find the Legislature enacted section 21107.7 with the intent of creating a mechanism whereby the *rules of the road* could be applied to private roads notwithstanding section 21001.  There is no statute generally limiting the Vehicle Code to public roads, and section 21107.7 did not create one.  The statute under which defendant was convicted, section 2800.2, is not part of Chapter 11 and is not part of the *rules of the road*.  As relevant here, evading an officer is defined in sections 2800.2 and 2800.1.  Defendant's offense, section 2800.2, subdivision (a), provides:  "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property . . . ."  Section 2800.1, subdivision (a) states in pertinent part:  "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist:  [¶]  (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.  [¶]  (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.  [¶]  (3) The peace officer's motor vehicle is distinctively marked.  [¶]  (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."  Notably absent

6

from these elements is any reference limiting the crime of evasion to driving on a highway.

The crime of evading an officer is not part of the *rules of the road* and is not limited to driving on highways.  This crime can be committed, as here, on a private road or on private land.  Defendant's contention to the contrary is without merit.

II

*Sufficiency Of The Evidence*

Defendant contends there is insufficient evidence of willful or wanton disregard of the safety of persons or property to support his felony evasion conviction.

In determining the sufficiency of the evidence, we ask whether " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Hatch* (2000) 22 Cal.4th 260, 272, italics omitted.)  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*People v. Casares* (2016) 62 Cal.4th 808, 823-824.)  Thus, reversal is not warranted unless there is no hypothesis on which there exists substantial evidence to support the conviction.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Citing *People v. Pakes* (2009) 179 Cal.App.4th 125 and *People v. Acevedo* (2003) 105 Cal.App.4th 195, defendant claims California courts interpret the phrase " 'willful or wanton disregard for the safety of persons or property' " as willful or wanton disregard for public safety.  Since the pursuit took place on private property, he concludes there is

7

insufficient evidence of a threat to the public, and accordingly there is insufficient evidence of willful or wanton disregard to support his conviction.

This argument simply rehashes the statutory interpretation claim we already rejected. It is also inconsistent with the felony evading statute, which, as defendant recognizes, is not limited by its terms to public property. The cases cited by defendant do not support limiting felony evasion to driving on highways. *Pakes* makes no analytical distinction between threats to private or public safety or property. (*People v. Pakes*, *supra*, 179 Cal.App.4th at p. 131.) *Acevedo* held that a conviction for felony evasion cannot stand where the officer's testimony did not establish that he activated his red overhead lamp during the pursuit. (*People v. Acevedo*, *supra*, 105 Cal.App.4th at pp. 198-200.) It does not address the distinction between public and private threat that defendant seeks to make here.

In any event, defendant's behavior displayed a willful and wanton disregard for the safety of members of the public, the deputies involved in the pursuit, as well as the same disregard for public property and the patrol vehicles he endangered through his reckless driving. Defendant drove at a speed unsafe for the area where the pursuit took place, causing the deputies to fear for their safety and to terminate the pursuit to preserve themselves and their vehicles. Substantial evidence supports the section 2800.2 conviction.

### III

*Application Of Penal Code Section 654*

The trial court imposed a concurrent lower term of 16 months on the felony evasion count. (RT 1097) Defendant contends sentencing on the felony evasion count should have been stayed pursuant to Penal Code section 654.

Penal Code section 654, subdivision (a) provides in relevant part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of

8

imprisonment, but in no case shall the act or omission be punished under more than one provision." The purpose of this statute "is to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 550-551.) The provision "prohibits multiple sentences where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct engaged in with a single intent and objective." (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 196.) But where a defendant acts with "multiple criminal objectives that [a]re independent of and not merely incidental to each other, then he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid*.)

"Whether [Penal Code] section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Defendant argues the felony evading was part of the same objective and course of conduct as the crimes associated with getting him out of his truck, assault on an officer (breaking Officer Berg's hand), and resisting an officer. Not so. Defendant completed the felony evading count before these crimes, having caused the deputies to terminate their pursuit so that defendant could park his truck near the house. Fighting the officers who were trying to arrest him shows a different objective, animus toward the officers, than the objective of the felony evasion -- getting away. Substantial evidence supports the trial court's ruling.

9

## IV

### *Pitchess Motion*

Prior to trial, defendant filed a *Pitchess* motion seeking discovery pertaining to Deputies Klundby, Berg, and Beatley. The trial court held an in camera hearing to examine all records produced by the custodian of records, and concluded the County should make two disclosures.

Defendant now asks this court to conduct an independent review of the sealed records of the hearing. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228, 1232.) The People do not oppose the request.

We will not disturb a trial court's ruling on a *Pitchess* motion absent an abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) Having reviewed the sealed records, we find the court did not abuse its discretion.

### DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Raye, P. J.

/s/
Hoch, J.

10